UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

JAMES DANIELS             )
                                )
v.                           )       No.: 2:12-cv-210
                                )       *Greer/Inman*
DAVID SEXTON, Warden      )

## MEMORANDUM OPINION

In 2006, James Daniels was convicted of first degree premeditated murder and attempted first degree murder by a jury in the Criminal Court for Cocke County, Tennessee. For the first offense, petitioner was sentenced to a life term of imprisonment and, for the second, a concurrent eleven-year term. Petitioner now brings this *pro se* application for a writ of habeas corpus under 28 U.S.C. § 2254, challenging the legality of his confinement under that judgment of conviction, [Doc. 7].

As grounds for relief, petitioner claims that: (1) the jury viewed petitioner in physical restraints, (2) his attorney gave him ineffective assistance, (3) evidence of the victim's violent history was improperly excluded at trial, and (4) the prosecutor engaged in misconduct.

Respondent David Sexton, Warden of the Northeast Correctional Complex and petitioner's custodian, has moved for summary judgment, [Doc. 13], offering in support the state-court opinions on direct and post-conviction review, the transcript of the trial and the post-conviction hearing, and the technical records, [Doc. 9, Addenda 1-4]. Petitioner does not oppose the motion.

In his motion, respondent argues that, under the deferential standards of review in 28 U.S.C. § 2254, petitioner is not entitled to relief from the state court decisions rejecting certain claims on the merits, while also arguing that particular claims have been procedurally defaulted or are not cognizable in federal habeas corpus proceedings. The Court agrees with respondent that summary judgment is warranted and will dismiss this petition on that basis.

# I. Procedural History

Following petitioner's trial, he unsuccessfully moved for a new trial. Petitioner then filed a direct appeal, which was denied by the Tennessee Court of Criminal Appeals (TCCA), and thereafter, by the Tennessee Supreme Court. *State v. Daniels*, No. E2006-01119-CCA-R3-CD, 2007 WL 2757636 (Tenn. Crim. App. Sept. 24, 2007), *perm. app. denied* (Tenn. 2008). Petitioner next sought post-conviction relief in the trial court. After an evidentiary hearing, the trial court dismissed the post-conviction case, the dismissal was affirmed on appeal, and the Tennessee Supreme Court declined further review. *Daniels v. State*, 2011 WL 2176522 (Tenn. Crim. App. June 2, 2011), *perm. app. denied* (Tenn. 2011). Petitioner now submits this instant federal habeas corpus application.

# II. Factual Background

Proof at trial showed that, on May 31, 2004, Lisa Mathis ordered petitioner to leave her mobile home after he stated that he had problems with Jamie Cox, who was visiting her at the time. To lend force to her directive, Ms. Mathis held a baseball bat. Petitioner responded that he would be back with something more than a stick. At 10:15 p.m., petitioner, armed with a handgun, returned to Ms. Mathis's home, accompanied by his co-defendant, who had a rifle. Ms. Mathis and Charles Adams were in the living room when the two entered, and she asked them to leave. Ignoring her request, the duo proceeded to the bedroom in the rear of the trailer, where the victim and two other visitors were located. Ms. Mathis had called 9-1-1 when the co-defendant entered, but he had pointed the rifle at her head, directed her to drop the phone, and asked her "where the s.o.b. was." Ms. Mathis heard a gunshot and the co-defendant then proceeded towards the rear bedroom. As Ms. Mathis ran to her neighbor's house, she heard another gunshot.

Mr. Adams, who had been present earlier when petitioner first came to the mobile home, also heard petitioner tell Ms. Mathis that he would return with something more than a bat. When Mr. Adams saw petitioner and the co-defendant arrive, he went to the bedroom to warn the victim. Petitioner and the co-defendant entered the bedroom. Petitioner fired the handgun and he and the victim began wrestling for possession of the weapon. Petitioner told the co-defendant "to shoot this s.o.b.," and the co-defendant shot the victim from a distance of three to five feet. The victim fell to the floor. Petitioner then pointed his pistol at Mr. Adams and "acted like" he pulled the trigger, but the gun did not fire. Petitioner instructed his co-defendant to shoot Mr. Adams, but the co-defendant refused. As petitioner was leaving the bedroom, he said, "[S]ay it was self defense." Mr. Adams watched petitioner and the co-defendant leave in a Subaru automobile.

Michael Benson was in the rear bedroom, preparing to smoke cocaine with the victim and David Shults, when petitioner entered with a handgun, yelling at the victim. Benson ran outside and hid behind a tree but, on his way out, he saw the co-defendant with a rifle. From his hiding place, Benson heard two gunshots and saw two cars leave. Benson identified the driver of one car as Shults but could not identify the occupants of the other car.

An employee of a local gas station testified that she had seen petitioner on May 31 at approximately 10:15 p.m. According to this testimony, petitioner, who was acting "sort of hyper" and who was accompanied by another man, asked the employee to get gas (the station was closed), and then to borrow money. Both requests were refused. Petitioner was driving a Subaru.

According to the officer at the crime scene, no weapons were discovered. However, a rifle cartridge, 7.62 caliber, was found beside a night stand on the floor of the bedroom where the victim's body was lying and a .40 caliber handgun cartridge was found in the bedding. Also

3

discovered was one bullet hole, which went through a pillow, a mattress, and through a wall in the mobile home, and another bullet hole on the left wall.

The forensic pathologist who performed the victim's autopsy found that the cause of death was a single gunshot that entered the victim's back, perforated his left lung, tore his heart, and exited through his chest. The residue of the wound indicated that it was a contact wound or was fired from very close range.

### III. Standards of Review

Summary judgment may be granted only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

The Antiterrorism and Effective Death Penalty Act of 1996 (ADEPA) limits a federal court's review of issues previously adjudicated and also provides that a federal court should presume a state court's findings of fact are correct, unless they are based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d)(2). It is a petitioner's burden to rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Moreover, a petitioner cannot be granted habeas relief on any claim litigated in the state courts, unless the resulting decision "was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1).

### IV. Discussion

As noted previously, petitioner has raised four main grounds for relief, each of which will be addressed individually.

## A.  Jury saw petitioner in restraints

In his § 2254 application, petitioner asserts that the jury was tainted by seeing him in handcuffs and shackles, which happened as he was being walked into the courthouse while members of the jury were buying snacks and smoking at the front door.  More precisely, petitioner maintains that he was escorted, while in handcuffs and leg irons, between jurors who had moved back against the wall to permit him to pass.  Seeing him thus, according to petitioner, gave the jurors the impression that he was dangerous and had to be restrained.  What's more, curative instructions by the trial court were minimal and did not address the inferences to be drawn by the jurors who witnessed that incident.

Respondent first argues that petitioner procedurally defaulted his claim by failing to present it to the TCCA under a "stand  alone federal theory," and that he cannot do so now as he is barred by state post-conviction law which imposes a one-petition rule and a one-year statute of limitations for filing post-conviction petitions.

A federal habeas court may not reach the merits of any claim that has not been exhausted by having been presented for resolution through all levels of state court review.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-47(1999).  Raising a claim on a state law basis in state court, rather than a federal constitutional basis, does not exhaust it for purposes of § 2254 relief.  *See Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987). A failure to exhaust a federal claim in the state courts constitutes a procedural default which bars habeas corpus review, unless a petitioner shows cause and prejudice to overcome the default.  *See Gray v. Netherland*, 518 U.S. 152, 162 (1966).

Petitioner presented this issue in his direct appeal to the TCCA. There, he alleged that, on the morning of the second day of his two-day trial, defense counsel informed the trial judge, outside the jury's presence, that some jury members had observed petitioner being brought into the courtroom in handcuffs and shackles. The trial judge then asked defense counsel whether he was asking that the matter be brought to the jury's attention, though he cautioned that it might draw further attention to the matter. Even so, the trial judge assured counsel that, if petitioner desired, he would follow that course of action. Defense counsel declined to request curative instructions, stating that he agreed with the trial court's analysis, but would simply ask that such a situation be avoided in the future. The trial judge then reminded the escorting deputies to do just that.

In considering this claim, the TCCA cited to *Willocks v. State*, 546 S.W.2d 819 (Tenn. Crim. App. 1976), which had observed that " the concept of due process imbedded in our state and federal constitutions guarantees every criminal defendant a fair and impartial trial," that due process mandated the presumption of innocence, and that this presumption included a defendant's right to the "physical indicia of innocence." *Id*. at 820. The *Willocks* court also observed that the U.S. Supreme Court "has approved the use of shackling and gagging only as 'a last resort.'" *Ibid*. (citing *Illinois v. Allen*, 397 U.S. 337, 344 (1970)). The *Willocks* court found that 'a defendant should never be shackled during his trial before a jury except in extraordinary circumstances. . . . (and) upon a clear showing of necessity." *Id*. at 822 (citation omitted).

Thus, by citing to *Willocks*, the TCCA indicated that it recognized the constitutional nature of the petitioner's claim and the TCCA proceeded to resolve the claim on a federal constitutional basis. A petitioner meets the fair presentation requirement if the state court rules on the merits of his claim. *See Gentry v. Lansdown*, 175 F.3d 1082, 1083 (8th Cir. 1999) (citing *Castille v. Peoples*,

489 U.S. 346, 351 (1989)). Based on these facts, the Court concludes that petitioner exhausted his claim in the state courts and did not procedurally default it. The Court turns now to the TCCA's merits resolution of the claim.

In *Deck v. Missouri*, 544 U.S. 622 (2005), the U.S. Supreme Court held that "[t]he law has long forbidden routine use of visible shackles during the guilt phase; it permits a State to shackle a criminal defendant only in the presence of a special need." *Id*. at 626. The Court reasoned that the routine use of visible restraints during trial undermines the presumption of innocence and violates due process, absent a trial court finding that the restraints are justified by escape or safety worries with respect to that particular defendant. *Id*. at 631-33. If the use of restraints is not justified, then the state must prove beyond a reasonable doubt that the restraints did not contribute to the verdict obtained. *Id*. at 635. *Deck* supplies the relevant legal rule governing this issue. *Mendoza v. Berghuis*, 544 F.3d 650, 653-54 (6th Cir. 2008).

In adjudicating this claim, the TCCA reasoned that petitioner was not restrained during the trial, which would have required the State to show a clear necessity for restraints. The TCCA also pointed out that state court precedent established that, depending on the context, incidental sightings of a defendant in restraints, such as happened to petitioner, are non-prejudicial. The TCCA then noted that, since petitioner specifically had declined the trial court's offer to issue curative instructions, he could not then complain that the trial court acceded to his wishes. The TCCA found no error.

Petitioner has not offered any clear and convincing evidence to counter the state court's factual findings concerning the restraints. Thus, the Court accepts that petitioner was not restrained

during the trial and that the jury's view of him wearing handcuffs and shackles while he was entering the courthouse was a matter of happenstance.

This Court recognizes that the TCCA did not cite to *Deck* or directly cite to any other Supreme Court case in disposing of the claim. Yet, this Court will defer to the state court decision so long as neither the reasoning nor result of the state court decision contradicts the relevant legal principle. *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam).

The state court's reasoning did not contradict the relevant legal principle, nor did it unreasonably apply *Deck*. First of all, the facts underlying *Deck* and its ultimate holding "concerned only visible restraints at trial." *Mendoza*, 544 F.3d at 654. The restraints of which petitioner complains were not visible to the jury during the trial, but only at the front door of the courthouse before the trial convened. Too, petitioner declined the trial court's offer to issue curative instructions to the jury, as both the trial judge and defense counsel thought it unwise to charge the jury concerning the shackling incident, which would have highlighted the situation involving petitioner's restraints and, thus, might have led the jury, perhaps, to draw the very inference that petitioner wished to avoid, i.e., that he was so dangerous that he had to be restrained. Furthermore, "the Supreme Court has not held that a defendant's constitutional rights are violated when jurors see him shackled during transport to or from the courtroom." *Id*. at 655.

Thus, if there is no clearly established law regarding the particular claim raised here, then the TCCA could not have rendered a decision contrary to or an unreasonable application of a non-existent Supreme Court precedent. *See Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) ("[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.") (citations

8

and internal quotation marks omitted); *see also Wright v. Van Patten*, 552 U.S. 120, 126 (2008) ("Because our cases give no clear answer to the question presented, let alone one in [petitioner's] favor, it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law.") (citation and internal quotation marks omitted). No relief in warranted with respect to petitioner's first claim.

## B. Ineffective Assistance of Counsel

In the 2254 application and attachment, petitioner maintains that his attorney gave him ineffective assistance by: (1) failing to interview witnesses listed by petitioner, (2) failing to investigate or present physical evidence to challenge the State's witnesses, (3) presenting no defense, (4) failing to file timely motions, and (5) laboring under a conflict of interest, [Doc. 7 at 7-8 and Doc. 7-1 at 1].

### 1. Insufficient Claims

Respondent first argues that, given the absence of any supporting factual allegations, these ineffective assistance claims have been insufficiently pled. Under Rule 2(c)(2) of the Rules Governing Section 2254 Proceedings, a petition must "state the facts supporting each ground." As the Supreme Court has explained, to be entitled to habeas corpus relief, a petitioner must "state facts that point to a real possibility of constitutional error." *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (citation and internal quotation marks omitted).

The petition does not identify the witnesses whom counsel failed to interview, specify or otherwise describe the physical evidence which was not investigated or inspected or the theory of defense which was forfeited, nor detail the motions which were not filed. However, a few claims are fleshed out in the supplement to the petition, [Doc. 10]. In that supplement, petitioner identifies

at least one witness who was not interviewed as David Dollar—an individual who allegedly arrived at the scene as the fatal shots were being fired. Petitioner alleges, in the supplement, that he gave a list of certain witnesses to his attorney, who then failed to contact even one of those persons, though they would have testified as to the victim's violent history or prior threats and (by implication) would have supported a self-defense theory. Therefore, claims (1) and (3) have factual backing and do not violate Rule 2.

## 2. Procedurally Defaulted Claims

Respondent also argues, in the alternative, that petitioner did not offer the highest available state court an opportunity to rule on sub-claims (2), (4), and (5), which involve failures to investigate or present physical evidence, to file timely motions, and to avoid a conflict of interest, before he presented these claims to this federal habeas court.

The Court has reviewed petitioner's state court pleadings offered during his post-conviction appeal to the TCCA, [Doc. 9, Addendum 4, Doc. 1], wherein petitioner presented six failings on the part of his attorney. Two of the three shortcomings alleged as sub-issues, i.e., claims (2) and (4), in his § 2254 application were not included in those six failures.

More specifically, petitioner did not offer sub-claim (2) to the TCCA for disposition and he, thereby, has committed a procedural default of this claim.

With respect to sub-claim (4), under the sub-heading entitled "Failure to Interview Witnesses"in the supplement, petitioner maintains that counsel failed to file timely objections with respect to "gory photos of the deceased," [Doc. 10 at 7]). If the Court broadly construes the federal claim to be that counsel failed to file a timely motion contesting the admission of photographs,

petitioner did not present it to the TCCA. Hence, as respondent correctly argues, sub-claim (4) has been procedurally defaulted.

Because petitioner has no remaining state court remedies available, given the one-year statute of limitations and the one-petition rule which apply to post-conviction petitions in Tennessee, *see* Tenn. Code Ann. § 40-30-102(a) and (c), sub-claims (2) and (4), which were not offered to the state courts, are procedurally barred.

Claim (5)—the conflict-of-interest claim—is different, as it was presented and argued at the post-conviction hearing and raised on appeal to the TCCA, albeit in a haphazard manner. For example, at the evidentiary hearing, petitioner asserted that a conflict of interest arose because counsel asserted the co-defendant's defense, not petitioner's defense, [Doc. 9, Addendum 3, vol. 3, Tr. of Post-Conviction H'rg at 1]. Testimony and argument concerning the purported conflict appear in other parts of the transcript, [*see id.* at 38-39 and at 103-04]. Similarly, arguments about the supposed conflict were offered in petitioner's brief to the TCCA during the post-conviction appeal, though they were presented under issues entitled, "Failure to Investigate Pertinent Facts and Interview Witnesses" and "Failure to Move to Sever," [Doc. 9, Addendum 4, Doc. 1, Pet'r's Post-Conviction App. Br. at 11-13 and 19].

Though the TCCA did not explicitly address the conflict of interest claim, embedded as it was in the discussion of other claims, the state court did address those other claims. The Supreme Court has held that when the state court addresses some of the claims raised by a defendant but not a claim that is later raised in a federal habeas proceeding, it must be presumed that the state courts adjudicated the § 2254 claim on the merits, unless that presumption is rebutted. *Johnson v. Williams* 133 S.Ct. 1088, 1091 -1092 (2013). Therefore, the Court finds that petitioner did not procedurally

default his conflict-of-interest claim, based on the unrefuted presumption that the TCCA resolved the claim on its merits.

Remaining for disposition, therefore, are sub-claims (1), (3) and (5), which were not procedurally defaulted, but instead, resolved on the merits.

3. Adjudicated Claims

The Court will assume, as has respondent, that the same facts which supported those issues in the state courts likewise support the habeas claims and will determine whether habeas corpus relief is warranted under the deferential review standards in 28 U.S.C. § 2244(d).

a. Claim (2)

Petitioner claims that his lawyer failed to interview witnesses whose names were contained in a list which petitioner had given him. Those individuals, according to allegations in the supplement, would have been able to testify to the victim's violent history, or at least the victim's immediate prior threats, (Doc. 10 at 6). In the TCCA, petitioner claimed that his attorney "completely ignored the list" and did not interview David Dollar, who was a potential witness to the shooting and had a relationship with Ms. Mathis, or anyone else on the list, [Doc. 9, Addendum 4, Doc. 1, Pet'r's Post-Conviction App. Br. at 13-16]. Petitioner also maintained that counsel failed to investigate pertinent facts and interview witnesses and, specifically, that counsel failed to meet with petitioner until 2.5 months prior to trial and then only met with him twice before trial for 20 minutes, [*Id*. at 11-12].

The TCCA ruled as follows:

> "With regard to trial preparation and interviewing witnesses, the record shows that trial counsel met with Petitioner several times at length prior to trial. Trial counsel felt that he was prepared for the case in advance of trial. . . . Additionally, trial counsel testified that

> he discussed potential witnesses with Petitioner, received a list of those witnesses, and attempted to contact some of them prior to trial. Petitioner has not shown any prejudice in this regard. Petitioner did not present witnesses at the hearing that would have established a clear case of self-defense or that offered any evidence that was unknown to trial counsel prior to trial. Petitioner must present witnesses at the post-conviction hearing to prevail on a claim of deficient representation for failing to call a witness at trial."

*Daniels v. State*, 2011 WL 2176522, at \*7 (Tenn. Crim. App. June 2, 2011).

The Supreme Court has established a two-part test for determining when assistance of counsel is ineffective. *See Lockhart v. Fretwell*, 506 U.S. 364, 376-79 (1993); *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). First, a petitioner must show that his counsel's errors were so egregious as to render counsel's performance constitutionally deficient, that is, outside the "wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *Gravely v. Mills*, 87 F.3d 779, 785 (6th Cir. 1996). The alleged errors or omissions must be evaluated from counsel's perspective at the time the conduct occurred and under the circumstances of the particular case. *Strickland*, 466 U.S. at 689. In order to show that counsel's performance was deficient, a petitioner must demonstrate "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id*. at 687.

Second, a petitioner must demonstrate prejudice by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 690, 694. The likelihood of a different result must be "substantial," not just "conceivable." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011) (quoting *Harrington v. Richter*, 131 S.Ct. 770, 791 (2011)). Finally, as the Sixth Circuit teaches, the Court's review of the claim does not end with a finding that petitioner has satisfied *Strickland*, but must then consider whether it was objectively unreasonable for the state court to reach the opposite conclusion. *Tibbetts v.*

13

*Bradshaw*, 633 F.3d 436, 442 (6th Cir. 2011) (noting that habeas corpus review must utilize both the *Strickland* and § 2244(d) standards, the latter of which "sets forth a heavy burden for a petitioner to overcome").

In discussing all of petitioner's claims of ineffective assistance of counsel, the TCCA referred to the test for such a claim contained in *Strickland*. Therefore, its adjudication of the claims is not contrary to *Strickland*. The next question, of course, is whether the TCCA unreasonably applied *Strickland* in disposing of those claims.

When a petitioner asserts, as a deficiency on the part of counsel, that his attorney failed to interview witnesses, he must, at the very least, present the testimony or evidence that the witness would have presented at trial so that a court can conclude that he has borne his "heavy burden" of showing that, but for the absence of the testimony, there is a reasonable probability that the result of the proceeding would have been different. *Hutchison v. Bell*, 303 F.3d 720, 748 -749 (6th Cir. 2002) (noting that "a petitioner cannot show deficient performance or prejudice resulting from a failure to investigate if the petitioner does not make some showing of what evidence counsel should have pursued and how such evidence would have been material").

Because petitioner did not offer the testimony of these individuals at the post-conviction hearing to show that the testimony would have redounded to the benefit of the defense, petitioner has failed to demonstrate that prejudice flowed from the absence of such trial testimony. The TCCA did not unreasonably apply *Strickland* when it rejected this claim, based on its conclusion that petitioner had not shown prejudice from counsel's supposed shortcoming. The writ will not issue with respect to this alleged attorney error.

*b. Claim (3)*

Petitioner alleges, in this sub-claim, that he was denied "any semblance of defense,"[Doc. 7-1 at 1]. Petitioner's presentation of the issue in his post-conviction appeal was more developed. There, he asserted that the victim had attacked him more than once and that, according to testimony offered at the post-conviction hearing, the victim had robbed petitioner at gun point, [Doc. 9, Addendum 4, Doc. 1, Pet'r's Post-Conviction App. Br. at 24]. Petitioner also maintained, and presented evidence at the post-conviction hearing to show, that there was a rancorous relationship between him and the victim, who had used or threatened violence against him on several occasions. This evidence was produced to support petitioner's contention that counsel failed to advance a self-defense theory that would have been viable had it been offered.

The TCCA disagreed with this proposition. It began its discussion by recounting trial counsel's testimony at the evidentiary hearing:

> During their meetings prior to trial, Petitioner and trial counsel discussed trial strategy. Petitioner explained to trial counsel that there was a history of bad blood between him and the victim including prior gun fire. Petitioner even told trial counsel that one of them was "going to end up dead sooner or later." Trial counsel was told by Petitioner that it was "self-defense." Trial counsel explained to Petitioner that the circumstances did not justify self-defense. Trial counsel was told by Petitioner that there was an initial encounter between Petitioner and the victim on the day of the murder. Then Petitioner left for a period of time before returning with a gun and an armed friend. Trial counsel did not feel after hearing Petitioner's version of the events that they could "close the loop and meet the legal burden of self-defense." Trial counsel was satisfied that he had explained to Petitioner that they could not meet the legal burden to satisfy self-defense. Trial counsel explained that his strategy was to "fight the State at every step of this, to question each one of their witnesses at length, to question their conclusions, to question the timeline, to question what little physical evidence there was" but that there was not "an affirmative legal defense" that they could rely upon at trial. Trial counsel thought that Petitioner understood that they would not pursue self-defense as a theory at trial.

*Daniels v. State*, 2011 WL 2176522, at *5.

Summarizing the testimony, the TCCA related that trial counsel gave lengthy testimony concerning the theory of defense—a theory formulated after discussing it with petitioner. Trial counsel did not believe that the proof would sustain a self-defense theory, explained his reasoning to petitioner, and thought that petitioner understood the explanation. The TCCA, ultimately concluding that petitioner had failed to show prejudice, rejected this claim of ineffective assistance. In disposing of the claim, the TCCA stated that " Petitioner did not present witnesses at the hearing that would have established a clear case of self-defense or that offered any evidence that was unknown to trial counsel prior to trial." *Id.*, 2011 WL 2176522, at *7

In Tennessee, self defense is a statutory defense, which provides that "a person . . . has no duty to retreat before threatening or using force intended or likely to cause death or serious bodily injury, if [t]he person has a reasonable belief that there is an imminent danger of death or serious bodily injury; [t] he danger creating the belief of imminent death or serious bodily injury is real, or honestly believed to be real at the time; and [t]he belief of danger is founded upon reasonable grounds." Tenn. Code Ann. § 39-11-611.

The incidents to show "bad blood" existing between petitioner and the victim, about which testimony was produced at the evidentiary hearing, had happened in the past and did not occur at the site of the shooting or immediately before. Moreover, petitioner was at the mobile home where the crime occurred twice on the day of the murder. The first time, petitioner left the home upon the resident's request, stating that he intended to return with something bigger than a bat. He was true to his word, and when petitioner returned the second time, he had a companion—the co-defendant—and both were armed. They entered the mobile home, and petitioner went into the

16

bedroom, where he fired his weapon at the unarmed victim. The victim, who was not hit, tussled with petitioner, and when the co-defendant entered the bedroom, petitioner ordered him to shoot the victim. The co-defendant did as he was bidden to do; he fatally shot the victim with his rifle.

This recounting of the events which unfolded through testimony offered at the trial dispels any reasonable reliance on a self-defense theory. The unarmed victim posed no real or immediate danger of death or serious bodily injury to petitioner, and there was no reasonable basis for petitioner to believe otherwise. Certainly, no lawyer, acting in an objectively reasonable fashion, who knew about the circumstances surrounding the killing and who understood the elements of self-defense, could have advanced such a defense. As the trial judge who presided over the post-conviction hearing noted, the testimony offered "would not have constituted self defense" as "there is no evidence that the victim . . . presented himself as a credible threat to the health and safety of this [petitioner]," (Doc. 9, Addendum 3, vol. 3, Tr. of Post-Conviction H'rg at 134 and 136).

Therefore, because petitioner failed to show that a self-defense theory would have been a viable defense, the TCCA did not unreasonably apply *Strickland* in finding that, absent a showing of prejudice, counsel did not give ineffective assistance in this instance.

*c. Claim (5)*

To establish a conflict of interest on the part of counsel, and thus, a violation of the Sixth Amendment, petitioner must demonstrate counsel "actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance." *Strickland*, 466 U.S. at 692 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 345 (1980)). To establish that a conflict of interest adversely affected counsel's performance, petitioner must "point to specific instances in the record

17

to suggest an . . . impairment of his interests . . . .There is no violation where the conflict is . . . merely hypothetical." *United States v. Mays*, 77 F.3d 906, 908 (6th Cir. 1996) (citations omitted). When a petitioner shows that counsel is burdened by an actual conflict of interest, prejudice is presumed. *Strickland*, 466 U.S. at 692 (citing *Cuyler*, 446 U.S. at 345-50).[1]

Though the claim offered in petitioner's pleadings simply alleges that counsel had a conflict of interest because he represented the co-defendant, the Court understands petitioner to be asserting, as he did in the TCCA, that counsel represented the co-defendant's *interests*, rather than petitioner's. The gist of petitioner's argument, as evidenced in his brief to the TCCA during his post-conviction appeal, was that trial "counsel ignored [petitioner]'s account that he was [present at the murder scene] and advocated instead for the co-defendant's version who denied being at [the murder scene]," (Doc. 9, Addendum 4, Doc. 1, Pet'r's Post-Conviction App. Br. at 13).

To this end, petitioner raised the conflict-of-interest issue in testimony presented at the evidentiary hearing, though his own statements were not supportive of his claim. For example, petitioner agreed that he and the co-defendant "weren't pointing fingers at each other" and that it was not a situation where he was saying that the co-defendant did it, while the co-defendant was saying that petitioner did it, [*id.* at 38-39]. Further, trial counsel agreed, during his cross-examination by petitioner's post-conviction counsel, that advocating a co-defendant's defense would be a direct conflict of interest, with this caveat: "if their defenses were different, perhaps," [*id.* at 103]. Trial counsel, however, did not agree that petitioner's version of the events was mutually

---

[1] The Supreme Court has applied *Cuyler*'s special prejudice-presumed standard only in cases where the conflict of interest stemmed from counsel's representation of more than one party. This is not that case, as petitioner's co-defendant was represented by a different attorney. *See State v. McGaha*, No. E2006-01984-CCA-R3-CD, 2008 WL 148943 (Tenn. Crim. App. Jan. 16, 2008), *perm. app. denied* (Tenn. 2008).

antagonistic to his co-defendant's, [*id.* at 104]. Furthermore, the post-conviction court, at the conclusion of the evidentiary hearing found that there were no inconsistent defenses, [*id.* at 135].

The record supports this factual finding. The strategy upon which rested petitioner's case, according to trial counsel, was to "try to poke holes in the State's case," [*id.* at 134]. As the trial court observed, petitioner had told trial counsel that "he went back armed to end this mess," [*id.* at 133]. Under the circumstances surrounding the killing, including those petitioner divulged to his attorney, as the trial court rhetorically inquired, "what other strategy could counsel have formulated?" [*Ibid.*]. The strategy of putting the State to its proof appears to have been the only one reasonably available to counsel.

While neither the trial court nor the TCCA explicitly ruled on the conflict-of-interest claim, the trial court found that the defense offered on behalf of both petitioner and his co-defendant were not inconsistent and that the strategy of defense pursued by counsel was the only one which could have been pursued. "Although counsel understandably felt hopeless about [petitioner's] prospects, nothing in the record indicates . . . that counsel's sense of hopelessness distorted his professional judgment. Counsel's strategy choice was well within the range of professionally reasonable judgments." *Strickland*, 466 U.S. at 700 (internal citations omitted).

It is quite significant that, when petitioner offered the claim to the TCCA, he did not point to any part of the record to demonstrate that counsel advanced the theory that petitioner was not at the mobile home at the time of the murder. Nor has he done so here. Therefore, in the absence of any citation "to specific instances in the record to suggest an . . . impairment of [petitioner's] interests," the conflict remains conjectural.

19

Hence, given the state court's factual findings and petitioner's failure to point to the record to show specific instances of the conflict, nothing approaching an actual conflict of interest has been established, and the TCCA was not unreasonable in failing to grant relief with respect to this claim.

## C. Evidentiary Error

Petitioner asserts, in his third main claim, that he was prejudiced by not being allowed to discuss the victim's violent history. He further asserts that the victim was a violent felon who had robbed petitioner at gunpoint, assaulted petitioner at his home, and threatened the lives of petitioner and his family. Still, the trial court did not allow petitioner to discuss any bad acts of the victim, even though this evidence was relevant to petitioner's state of mind and, possibly, could have exculpated him of premeditated murder and, certainly, would have served to mitigate the crime.

Respondent asserts a procedural default defense, and alternatively, maintains that the claim is rooted in state evidentiary law, which does not furnish a cognizable basis for habeas corpus relief. The particular procedural default alleged is petitioner's failure to present the issue to the highest available state court. Respondent is correct concerning petitioner's failure to present this alleged error first to the state courts before offering it to this federal habeas court. A review of the pleadings filed in the TCCA on direct review and post-conviction review verifies that the state appellate court was never offered an opportunity to rule on the claim. Petitioner has not shown or even alleged cause and prejudice to overcome the procedural default hurdle, and federal review is now barred.


## D. Prosecutorial Misconduct

In his final claim, Petitioner asserts that in several instances the prosecutor engaged in misconduct. The misconduct alleged is that the prosecutor: (1) failed to give petitioner full

discovery, (2) mentioned evidence not in record (i.e., suggested petitioner had disposed of the murder weapon in a creek, though no supporting evidence existed in record), and (3) used perjured testimony from drug-addicted witnesses, whose stories changed, and did not disclose information under *Giglio v. United States*, 405 U.S. 150 (1972), regarding deals made with witnesses, despite the light treatment the witnesses received in connection with their own criminal sentences.

To this last claim respondent asserts a defense of procedural default and argues, in the alternative, that the claim is insufficiently pled.

Again, respondent is correct about the procedural default of this claim. The Court has reviewed petitioner's state court pleadings and does not find that he raised his prosecutorial misconduct claim in the TCCA during either of its appellate reviews of his case. The failure to do so constitutes a procedural default, which bars review, unless petitioner shows cause and prejudice to excuse the default. No such a showing has been made, or even offered, and the claim will not receive habeas corpus review.

## V. Certificate of Appealability

Finally, the Court must decide whether to issue a certificate of appealability (COA). A petitioner qualifies for issuance of a COA if he has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c). A petitioner, whose claims have been rejected on the merits, satisfies the requirements of § 2253(c) by showing that jurists of reason would find the assessment of the claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). A petitioner, whose claims have been rejected on a procedural basis, must demonstrate that reasonable jurists would debate the correctness of the Court's procedural ruling. *Id*.; *Porterfield v. Bell*, 258 F.3d 484, 485-86 (6th Cir. 2001).

The Court has individually assessed petitioner's claims under the relevant standards and finds that those claims do not deserve to proceed further because they have no viability in light of the governing law. Thus, jurists of reason would not conclude that the disposition of those claims was debatable or wrong. Because petitioner has failed to make a substantial showing of the denial of a constitutional right, a COA will not issue.

A separate order will follow.


**ENTER**:


s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
